# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CIVIL CASE NO. 1:09cv170

| | |
|---|---|
| VALDESE WEAVERS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| HIGHLAND FABRICS, INC. and ) | |
| STUART COSGRIFF, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on the Defendants' Motion to Dismiss Plaintiff's Complaint for Declaratory Judgment [Doc. 4]; the Defendants' Objections [Doc. 14] to the Magistrate Judge's Memorandum and Recommendation [Doc. 13], recommending that the Defendants' Motion to Dismiss be denied; and the Defendants' Motion to Strike Plaintiff's Opposition to Defendants' Objections [Doc. 18].

## I. FACTUAL AND PROCEDURAL BACKGROUND

The instant case arises out of an "Independent Sales Representative Agreement" (hereinafter, "Agreement") entered between the Plaintiff Valdese Weavers, Inc. ("Valdese Weavers") and the Defendants Highland

Fabrics, Inc. ("Highland Fabrics") and Stuart Cosgriff ("Cosgriff") on April 5, 2000.  Valdese Weavers is a manufacturing company incorporated under the laws of North Carolina and doing business in Valdese, North Carolina. [Valdese Complaint, Doc. 1 at 10].  Highland Fabrics is a New York corporation with its principal office in the State of New York.  [Id.].  Cosgriff is a resident of New York and the principal owner of Highland Fabrics, an entity through which he has operated various businesses over the past twenty years.  [Id.].

Pursuant to the parties' Agreement, Highland Fabrics and Cosgriff agreed to serve collectively as an "independent sales representative" for Valdese Weavers throughout the northeastern United States, South America, and eastern Canada.  [Agreement, Ex. A to Valdese Complaint, Doc. 1 at 17].  The Agreement was executed by the parties in Burke County, North Carolina, and specifically provides: "This Agreement shall be construed and enforced in accordance with and governed by the internal laws of the State of North Carolina."  [Id. at 20].

On November 21, 2008, Valdese Weavers notified Highland Fabrics and Cosgriff of its intent to terminate the parties' relationship within thirty days, as provided for in the Agreement.  [Valdese Complaint, Doc. 1 at 12].

On or about December 9, 2008, Valdese Weavers received a written demand from Highland Fabrics and Cosgriff, through their counsel, claiming that Cosgriff was an employee of Valdese Weavers and asserting claims of discrimination and retaliation in the termination of his employment. [Id. at 13].

On April 9, 2009, Valdese Weavers commenced the present action in the Burke County General Court of Justice, Superior Court Division, seeking a declaratory judgment to the effect that: (1) the Agreement between the parties is an independent contractor agreement; (2) Highland Fabrics and Cosgriff were independent contractors and not employees of Valdese Weavers; and (3) Highland Fabrics and Cosgriff are not entitled to any relief pursuant to any legal theory requiring the existence of an employer/employee relationship between the parties. [Id. at 14]. Valdese Weavers also asserts a claim seeking indemnification from Highland Fabrics and Cosgriff pursuant to the Agreement for any losses, including attorneys' fees, incurred from the commencement of this litigation. [Id. at 15].

On May 5, 2009, Highland Fabrics and Cosgriff removed the action to this Court on the basis of diversity jurisdiction. [Notice of Removal, Doc. 1

at 1]. The same day, Cosgriff filed a Verified Complaint ("Cosgriff Complaint") against Valdese Weavers in New York state court, asserting claims of unlawful termination based on age discrimination, disability discrimination, and retaliation in violation of the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-107(1)(a), 8-107(7). [Cosgriff Complaint, Doc. 1 at 24].

On May 7, 2009, Highland Fabrics and Cosgriff moved to dismiss Valdese Weavers's Complaint. While labeling their motion as one to dismiss on the grounds of lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted [See Doc. 4, styled "Defendants' Rule 12(b)(1)(6) [sic] Motion to Dismiss Plaintiff's Complaint for Declaratory Judgement [sic]"], Highland Fabrics and Cosgriff argue in support of this motion that the Court should exercise its discretion and dismiss Valdese Weaver's Complaint so that the entirety of the parties' dispute could be litigated in New York. [Doc. 5 at 8].

The Defendants' Motion to Dismiss was referred to the Honorable Dennis L. Howell, United States Magistrate Judge, for a recommendation as to disposition. After weighing the relevant factors, Judge Howell concluded that the Court should retain jurisdiction over this matter and

therefore recommended that the Motion to Dismiss be denied. [Doc. 13].

Highland Fabrics and Cosgriff filed timely Objections [Doc. 14] to the

Memorandum and Recommendation. Valdese Weavers filed a Response

to said Objections on August 10, 2009. [Doc. 16]. Thereafter, Highland

Fabrics and Cosgriff moved to strike Valdese Weavers's Response as

untimely. [Doc. 18]. Valdese Weavers opposes this Motion, arguing that

its Response was timely filed. [Doc. 19].

Having been fully briefed, these matters are now ripe for disposition.

## II.     DEFENDANTS' MOTION TO STRIKE

As an initial matter, the Court will address the Defendants' Motion to

Strike the Opposition filed by Valdese Weavers to the Defendants'

Objections on the grounds that said Opposition was untimely. [Doc. 18].[1]

The Defendants' Objections were filed on July 23, 2009. Valdese

Weavers thus had ten (10) business days in which to respond to the

Defendants' Objections. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b)(2); LCvR 72.1(C). Because service of the Defendants' Objections

was by means other than personal delivery, however, an additional three

---

[1] Defendants filed a "Notice of Motion to Strike Plaintiff's Opposition" [Doc. 17] in addition to their Motion to Strike [Doc. 18]. The filing of such a Notice is entirely unnecessary, and thus the Notice [Doc. 17] will be stricken from the record.

(3) days then was added to this period, see Fed. R. Civ. P. 6(d); LCvR 72.1(C), thus extending the deadline for the Plaintiff's response to August 10, 2009. The Plaintiff's Opposition was therefore timely filed, and thus, the Defendants' Motion to Strike will be denied.

## III. DEFENDANTS' MOTION TO DISMISS

As the Defendants have raised various specific objections to the Magistrate Judge's Memorandum and Recommendation, the Court will review the Magistrate Judge's proposed findings and conclusions de novo. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

Though styled as a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the Defendants' Motion to Dismiss in fact requests that this Court exercise its discretion and decline to entertain Valdese Weavers's declaratory judgment action. Thus, the issue presented by the Defendants' Motion is not whether the Court *could* exercise jurisdiction over the Plaintiff's action[2] but rather whether the Court *should* exercise such jurisdiction in light of the parallel litigation pending in the State of New York.

---

[2]The Court's subject matter jurisdiction apparently is not in dispute, as the Defendants themselves assert in their Notice of Removal that there is complete diversity between the parties and the amount in controversy exceeds $75,000. [Notice of Removal, Doc. 1 at 2].

6

The decision to entertain a declaratory judgment action pursuant to the North Carolina Declaratory Judgment Act is entirely discretionary. See N.C. Gen. Stat. § 1-257 ("The court *may* refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding . . . .") (emphasis added); Augur v. Augur, 356 N.C. 582, 588-89, 573 S.E.2d 125, 130 (2002) ("section 1-257 permits a trial court, *in the exercise of its discretion*, to decline a request for declaratory relief") (emphasis added).

This exercise of discretion "is especially crucial when, as here, a parallel or related proceeding is pending in state court." New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 297 (4th Cir. 2005).[3] As the Supreme Court noted in Brillhart v. Excess Insurance Co.:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues,

---

[3]Given the similarities between the North Carolina Declaratory Judgment Act and the federal Declaratory Judgment Act, North Carolina courts have found federal law "instructive" in construing section 1-257. See Augur, 356 N.C. at 586, 573 S.E.2d at 128-29; Coca-Cola Bottling Co. Consol. v. Durham Coca-Cola Bottling Co., 141 N.C. App. 569, 577, 541 S.E.2d 157, 163 (2000) ("as we have in the past, we deem it appropriate to examine federal court decisions addressing this declaratory judgment issue"), disc. rev. denied, 353 N.C. 370, 547 S.E.2d 433 (2001).

> not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

316 U.S. 491, 495, 62 S.Ct. 1175-76, 86 L.Ed. 1620 (1942). Accordingly, in the context of a declaratory judgment action, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Wilton v. Seven Falls Co., 515 U.S. 277, 288, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995).

When deciding whether to entertain jurisdiction over a declaratory judgment action when a related state court proceeding is pending, the Court must consider "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." Brillhart, 316 U.S. at 495, 62 S.Ct. at 1176. "This consideration should be guided by a number of factors, including the nature and scope of the state proceeding and 'whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 257 (4th Cir. 1996) (quoting Brillhart, 316 U.S. at 495, 62 S.Ct. at 1176).

Guided by these considerations, the Fourth Circuit has identified the following factors (referred to as the "Nautilus factors") to consider in deciding whether to retain jurisdiction over a declaratory judgment action when a related state court proceeding is pending:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law" and (iv) whether the declaratory judgment action is being used merely as a device for "procedural fencing" – that is, "to provide another forum in a race for res judicata" or "to achieve a federal hearing in a case otherwise not removable."

Centennial Life, 88 F.3d at 257 (quoting Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir. 1994)).

The Court will address each of these factors *seriatim*.

### A. Strength of State's Interest

The first factor that the Court must consider is the strength of the state's interest in having the issues that have been raised in the federal declaratory action decided in the state courts.

In evaluating this first factor, the Magistrate Judge concluded that North Carolina has a compelling interest in having the issues raised by this declaratory judgment action resolved by a court sitting in North Carolina (albeit a federal court). Specifically, the Magistrate Judge found that North Carolina has a substantial interest in the interpretation and enforcement of contracts executed in North Carolina and to which the parties agreed that North Carolina law would apply. [Doc. 13 at 9-12]. While the Court agrees with the Magistrate Judge that North Carolina has a substantial interest in the interpretation and enforcement of North Carolina contracts, the Court concludes that such interest is only slightly more compelling than the valid interests of the State of New York in having the issues raised by this action litigated in a New York court.

First, it is important to identify what issues have been raised in this case. Valdese Weavers initiated this action after receiving notice from Cosgriff that he intended to assert claims of discrimination and retaliation. By filing this declaratory judgment action, Valdese Weavers seeks a ruling construing the terms of Cosgriff's North Carolina employment contract and declaring his employment status to be that of an independent contractor. Cosgriff's employment status is significant because unless Valdese

Weavers is deemed to be Cosgriff's "employer," Cosgriff cannot maintain the claims that he had threatened to assert (and since has asserted) under the New York City Human Rights Law. See N.Y. City Admin. Code § 8-107(1)(a) (prohibiting unlawful discriminatory practices by an "employer").

The Court agrees with the Magistrate Judge that North Carolina clearly has a substantial interest in the interpretation and enforcement of the parties' contract. The contract was executed within this state and the parties agreed that North Carolina law would control their agreement. Furthermore, determining whether Mr. Cosgriff was an employee of a corporation domiciled in North Carolina is an issue in which North Carolina courts have a substantial interest in resolving.

The State of New York, however, also has substantial interests in the resolution of the issues raised by this litigation. It is alleged that Cosgriff is a resident of New York and that he performed his duties as a sales representative for Valdese Weavers in that state. [Cosgriff Complaint, Doc. 1 at 24 ¶3]. Certainly, New York has a substantial interest in protecting its residents and workers from unlawful employment discrimination and retaliation. Furthermore, the determination of Cosgriff's employment status is critical to determining whether he has stated viable

claims for discrimination and retaliation under the New York City Human Rights Law. Clearly, New York has a substantial interest in determining whether one of its citizens has stated viable discrimination claims under that State's law.

Assuming that the choice-of-law provision within Cosgriff's employment contract is valid, the court tasked with determining Cosgriff's employment status will be required to construe that contractual language in accordance with North Carolina law. A New York state court, however, can construe the terms of this contract in accordance with North Carolina law just as easily as any court in North Carolina could. See Hartford Cas. Ins. Co. v. BB&T Fin. Corp., 131 F.Supp.2d 752, 755 (W.D.N.C. 2001) ("while it may ultimately be determined that North Carolina insurance law should apply to the interpretation of the contract . . . South Carolina's interest in the outcome of this case is greater than that of North Carolina, and there is no reason to presume that the state court will misidentify or misapply the applicable law").

For these reasons, while the Court agrees with the Magistrate Judge that North Carolina has an interest in the interpretation and enforcement of contracts executed in North Carolina and to which the parties specifically

agreed that North Carolina law would be applied, the Court finds that such interest only slightly outweighs the substantial interests that the State of New York has in this case. Accordingly, the Court concludes that, at best, this factor weighs only slightly in favor of retaining jurisdiction over this declaratory judgment action.

**B.     Efficient Resolution of Issues and Avoiding Excessive Entanglement**

The second and third factors to be addressed are whether the issues raised in the present action can more efficiently be resolved in the pending state court action and whether there are overlapping issues of fact or law that would result in an unnecessary "entanglement" between the federal and state court systems.

In addressing these factors, the Magistrate Judge concluded that there had been no showing that the issues raised in the declaratory judgment action could be more efficiently resolved in the New York state action, and that any entanglement resulting from overlapping issues of fact or law would be minimal, as this Court would likely resolve any overlapping issues well before the New York action could be tried. [Doc. 13 at 12-14].

It may indeed be true that this Court could resolve the present action quickly, perhaps even before the New York litigation could be concluded.

13

When considering issues of judicial efficiency, however, the speed with which the declaratory judgment action could be disposed of is not the relevant consideration. As Judge Howell previously has noted:

> Efficiency is not synonymous with speed . . . . [E]fficiency means the efficient use of all court resources, which common sense would counsel against two courts gearing up to resolve what are likely to be identical issues stemming from the same operative facts. Piecemeal litigation is particularly draining on scarce judicial resources.

Pa. Nat'l Mut. Cas. Ins. Co. v. Carriage Park Associates, LLC, No. 1:08CV363, 2008 WL 5220633, at *7 (W.D.N.C. Dec. 11, 2008) (Howell, M.J.). In the present case, the central issue raised by the Plaintiff's declaratory judgment action is that of Cosgriff's employment status. This issue also is raised in Cosgriff's state court action; indeed, as noted by the Magistrate Judge, it is "but one of many issues" that the New York court will have to decide. [Doc. 13 at 12-13]. Allowing the Plaintiff's declaratory judgment action to go forward on this single narrow issue would result in the same parties litigating the same state law issue in two separate courts at the same time. This duplication of judicial efforts would not only be inefficient: it would be precisely the type of "gratuitous interference" that the

Supreme Court repeatedly has cautioned courts to avoid. See Wilton, 515 U.S. at 283, 115 S.Ct. at 2141; Brillhart, 316 U.S. at 495, 62 S.Ct. at 1176.

For these reasons, the Court concludes that the second and third Nautilus factors also weigh in favor of deferring to the pending New York litigation.

### C. Procedural Fencing

The fourth and final Nautilus factor requires consideration of whether this declaratory judgment action is being used as a device for "procedural fencing," or forum shopping.

In deciding whether to entertain a federal declaratory judgment action, federal courts have placed little significance on the fact that the declaratory judgment action was filed before the parallel state court proceeding. See, e.g., Centennial, 88 F.3d at 258 ("although the federal action was filed first, we decline to place undue significance on the race to the courthouse door"). North Carolina courts, too, have recognized that

> in situations in which two suits involving overlapping issues are pending in separate jurisdictions, priority should not necessarily be given to a declaratory suit simply because it was filed earlier. Rather, if the plaintiff in the declaratory suit was on notice at the time of filing that the defendant was planning to file suit, a court should look beyond the filing dates to

> determine whether the declaratory suit is merely a strategic maneuver to achieve a preferable forum.

Coca-Cola Bottling Co., 141 N.C. App. at 579, 541 S.E.2d at 164.

In the present case, both parties argue at length about the timing of the filings of these actions and whether the other party used its filing as a means of procedural fencing. All that the pleadings reveal, however, is that the Plaintiff was placed on notice in December 2008 that Cosgriff claimed to be an employee of Valdese Weavers and that he further claimed that he had been subjected to discrimination and retaliation during the course of his employment. For whatever reason – whether it was due to the Defendants' inaction, as claimed by the Plaintiff, or whether it was due to the ongoing negotiations between the parties, as claimed by the Defendants – no litigation was filed by either party for several months. The actual reason for this delay is not disclosed by the parties' pleadings, and the Court will not engage in any speculation on the issue. Limited as the Court is to the pleadings before it, the Court cannot conclude that Valdese Weavers's actions in filing this declaratory judgment action stemmed from any improper motivation to achieve a more preferable forum. Accordingly, the Court finds this factor to be neutral. See Hartford Cas. Ins. Co., 131 F.Supp.2d at 755.

After careful review, the Court concludes that of the four <u>Nautilus</u> factors, the first factor weighs only slightly in favor of retaining jurisdiction, the second and third factors weigh strongly in favor of deferring to the litigation ongoing in New York, and the fourth factor is neutral. Upon careful weighing of these factors, the Court concludes that the principles of comity, deference, and judicial economy require this Court to defer to the courts of New York to resolve the issues presented by this declaratory judgment action.

The Court, however, will not dismiss this action as urged by the Defendants. As the Supreme Court noted in <u>Wilton</u>, "where the basis for declining to proceed is the pendency of a state court proceeding, a stay will often be the preferable course, insofar as it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." 515 U.S. at 288 n.2, 115 S.Ct. at 2143 n.2. Staying this action will alleviate the concern expressed by the Magistrate Judge, and shared by this Court, that a "cloud of litigation could return" if this Court were to dismiss Plaintiff's action and thereafter the Defendants dismissed the action pending in the New York courts. [See Doc. 13 at 17]. For this reason, the Court will stay the present action

pending the resolution of the litigation pending between the parties in the State of New York, and the Defendants' Motion to Dismiss will therefore be denied.

## V.   CONCLUSION

For the reasons stated herein, the Defendants' Motion to Dismiss will be denied. In the exercise of its discretion, the Court will stay this action pending further proceedings in the New York state litigation.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion to Dismiss [Doc. 4] is **DENIED**.

**IT IS FURTHER ORDERED** that the Defendants' Notice of Motion to Strike Plaintiff's Opposition to Defendants' Objections [Doc. 17] is **STRICKEN** as improvidently filed.

**IT IS FURTHER ORDERED** that the Defendants' Motion to Strike Plaintiff's Opposition to Defendants' Objections [Doc. 18] is **DENIED**.

**IT IS FURTHER ORDERED** that this case is hereby **STAYED** pending the resolution of the New York state action.

**IT IS FURTHER ORDERED** that counsel for the Plaintiff and Defendants shall provide a joint status report on the progress of the New York state court action to this Court on a quarterly basis until such time as the state court action is resolved.

**IT IS FURTHER ORDERED** that this case shall be administratively closed until further Order of the Court.

**IT IS SO ORDERED.**

Signed: December 2, 2009

Martin Reidinger
United States District Judge